28 TRAVIS MCMASTER – Who is the other lawyer? Do we have just a minute. Did you have Mr. Baker? He's here. I apologize. I thought we were there. You were in the wrong courtroom. I was in the courtroom just next door. I thought our argument was up second. You're Mr. Baker. I'm Mr. Medicchetti. You're Mr. Medicchetti. Yes. Mr. Medicchetti representing Philip Morris. That's like your worst nightmare, taking an exam when you haven't bought the book. So you were in the wrong courtroom. Yes. Well, good. We're glad you're here. You might have been in Montgomery or Jacksonville or Miami. At least I made it to the right state. That's happened before.       I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm David Medicchetti, and I'm here on behalf of the appellant, Philip Morris, USA, in this case. In light of this court's en banc decision in the Graham appeal, which is currently before the U.S. Supreme Court on a cert petition, there's only one issue remaining to be resolved in this Griffin appeal. All that's left is whether or not the court should have granted a 59E motion. Yes, Your Honor. That's it. That's the only remaining issue. On the money. Right. Right. And what that boils down to is really whether Mr. Griffin should be allowed to recover an amount after the comparative fall reduction of $95,000. And you have the problem in this case that there's no special interrogatory or special verdict. Right. There was one line in the verdict form in this case, and our position is that despite the fact that there's only one line here, based on the party's stipulations as to two of the three categories of damages, and the court's instructions of the jury that it must accept those amounts as proven, that we can take the general verdict in this case, and we can find out with certainty, we know with certainty, what amount of damage is the jury awarded for the three different categories. Well, I'm assuming you didn't try this case. Is that right? No, Your Honor. When it's not right, or you? What's that? I'll skip over that. The fact is, Philip Morris argued to the jury that it didn't have to accept any of the stipulated figures. Well, actually, if you. It didn't have to award any of the stipulated figures, right? It's true that counsel said that, Your Honors, but I think when you look at the transcript as a whole, and I'd refer the court to, and I apologize because this wasn't specifically noted in our reply brief, but in Volume 7, which is the trial transcript, page 43 is the plaintiff's closing, and pages 64 through 66 of the defense closing, that all occurs before the remarks that Mr. Griffin cited in his brief, and that I believe the court is referring to. And I believe both in isolation and in context, there was no suggestion here that the jury did not have to award or that it shouldn't award the stipulated amounts. The first thing I'd like to call. Even more fundamentally, though, if we're trying to get why we are here, I think you would agree that if we had had a special, not a general verdict, but a special verdict that broke out categories of damages, including medical expenses, we wouldn't have a problem. We'd know what the jury had said the medical expenses were, then the set-off principles could be applied. But we didn't. We had a general verdict. And why? Because your side wanted a general verdict, as I understand it. The plaintiff asked for a special verdict form, and the defendant opposed that. So why in the world should we be doing all these mental gymnastics to try to undo, essentially, what your client caused to happen? Well, we did object, that's true, to the multiple lines in the verdict form. But the basis for that, really, if you compare where we are now to where we would have been with the multiple lines, is with multiple lines, we would have had an amount that the jury was required to enter on two of the three lines. And then we would have one amount that was within the jury's discretion. And here, from our point of view, there was no need for multiple lines. We would end up in the same place because we have. Why? If you'd had a form where the jury had said medical expenses are X, pain and suffering Y, loss of income Z, why would we be in the same place? Well, because the plaintiffs, if you look at what the plaintiffs have raised in their arguments, plaintiff is saying that there's been a waiver here. Plaintiff is saying that this bill at issue was not included in this amount. And these are arguments that the plaintiff would still be making, even if the jury had written in the stipulated amount on this separate line. So we would still end up in the same place. And in our view, in this case, there was no need. We'd be in a better place, wouldn't we? We wouldn't have to worry about all the other issues to get us to the waiver argument. Well, we have one. We would have one less issue to worry about. But here, I think we have, if you combine the stipulations and the court's instructions that it has to accept those numbers as proven, and the presumption that the jury follows its instructions, I think we get to the same place that we would be in with multiple verdict forms in this case. I don't see that, because what the judge instructed was that the jury was obliged to accept the numbers. But the judge didn't instruct them that if they found for the plaintiff, as to liability and everything else, they were obliged to award damages, including the stipulated medical expenses. He never said that, right? No, that was not in the instructions, Your Honor. So jump ball, right? Whatever they did, they did. Well, I think they had the jury, again, I go back to the case law. What were the words used by the court to the jury about the stipulations? The words used were, you must accept the stipulations as evidence and regard these facts as having been proved. But the jury doesn't know what that means, does it? Well, the jury knows that there's an amount and that that amount has been proved. Well, the jury wouldn't know what it means unless you look at the oral argument, the closing argument of the lawyers. Well, I've never read the closing argument. Did the plaintiff argue that the jury should award money for those stipulated amounts? Yes, both the plaintiff's counsel said that those amounts were undisputed in his closing argument. No, I know they're undisputed. The plaintiff's counsel tells the jury to award that amount of money in its verdict. Yes, the plaintiff's counsel told the jury that those were the amounts that it should include in its verdict for the medical expenses and the lost wages. It was slightly more ambiguous than that as I read it. You're referring to page 43 of volume 7, right? Yes. OK, so what he says, the plaintiff's lawyer, is this. If you find that we've proven our case and you believe that these are the economic losses of earnings in medical bills and you accept what the parties have put in as stipulated amounts, then, now I paraphrase, you, the jury, should award X, all predicated on one word, if. And I agree that that's what he said, and I think that if you look at the defense counsel's argument, you know, the defense counsel is also pointing out that the mere fact that there's a stipulation doesn't mean that damages have to be awarded because there are these prerequisites. You have to get to that point. And the concern, I think, for example, if plaintiff's counsel had said you must award these damages, defense counsel stands up in objection and says, well, that's improper argument because they have to find Engle class membership, they have to find liability on the claims first before we get to damages. So both sides have a little bit of a caveat in terms of you don't, you have to award these if they're proven, they're undisputed amounts, but you may not get to that point. Well, and your argument, to me, sounds like a terrific argument for why we can't tell what the jury did. Well, I think you have to go back to the instructions, Your Honor, in that the trial court was very clear in its instructions, counsel's arguments, of course, are not evidence, and that if there's a conflict between anything that counsel says and the law that I'm instructing you on, you have to follow the law, and the instructions are very clear that these facts have to be accepted as proven. Yeah, sure, they have to be accepted as proven, but that's different from saying that the jury is obliged to award them if they find liability. That's different, isn't it? I think in this context where both plaintiffs' counsel were arguing that these facts were, that these issues were undisputed and that there was no question as to what the amount is of these expenses, then I think it has the same effect. It would have certainly been clearer had there been an instruction in retrospect saying that the jury must award that amount, but I think given the jury's instructions, that was the And in terms of the closing arguments, I would just point out that if it seems from plaintiff's brief that there's a suggestion that this was some sort of a jury nullification argument or a claim that, you know, despite the stipulated amounts, that the jury could just award whatever it wanted, and, you know, there was no objection to that if that was really what counsel thought was going on, and in context, it simply just, it doesn't read like that. It's a response, and that's why I was referring to the other aspects of plaintiff's argument beforehand because the plaintiff, in the context of pain and suffering damages, had brought up a laundry list of damages, including a hospitalization that none of the doctors had testified had anything to do with COPD. So when defense counsel is coming back in his closing and saying, look, Mr. Griffin's seeking to recover for items that aren't related to COPD, he's taking plaintiff's statements and responding to them, but then he's making very clear that we've agreed to a certain amount, we've agreed to these bills for the lung transplant, and we've agreed to these lost wages, but this other stuff that's not related to COPD is not compensable. So I think when you read the entire closing in context, defense counsel is responding to the argument plaintiff's counsel's made on pain and suffering and indicating what is not in dispute, which are, again, the stipulated amounts of the lost wages and the medical expenses, including these contractual discounts, which it's not in dispute, were never paid by anybody and never will be paid. And on the issue of the multiple lines on the verdict form, just to put a finer point on that, if we had had multiple lines on the verdict form, we would, of course, take one issue off the table. We'd still have the other issues the plaintiff's raised, so we'd still be here. If the jury had disregarded its instructions and entered a different amount, I think we'd also be here because plaintiff would have moved for an additor or plaintiff would have been claiming that we don't know which medical bills were included in that lesser amount. So I think the contrast between the cases that the district court relied on in what we view as a blanket ruling, that whenever you have a general verdict, it would be speculation to try to figure out the amounts, we think the fundamental difference here is the stipulations and the fact that we had a stipulation on two things, and so we can use subtraction to find out what the amount of the third category was. But what does Florida law say with the following hypothetical? A hospital provides medical expenses for the plaintiff, and the plaintiff is put on notice by the hospital that the it seeks reimbursement from any judgment the plaintiff obtains. And let's suppose you have a general verdict like it is now, as you have the money paid into the judgment in the clerk's office to satisfy the judgment, and the hospital doesn't appear to collect its subrogated amount. What happens then? Because it's the hospital that is entitled to the money, not the defendant. The defendant is not entitled to the money. The defendant is obligated for all of the expenses. So what does Florida law say if the subrogated hospital fails to come to the court to seek its recovery? Well, the subrogated hospital has the right to recover only what it paid. I understand. Let's deal with my hypothetical. And that's what I'm trying to get you to deal with. Let's deal with my hypothetical. There's a judgment for X dollars. It's a general verdict and presumably includes the hospital's expenses. All right. And the hospital doesn't seek to recover the expenses. You follow me? Yes. Okay. It sleeps on its rights. Is there a time that goes by and the hospital doesn't appear so now the defendant can reduce the judgment by the amount of the expenses? Well, the way that I read the collateral source statute, Your Honor, the money goes to the plaintiff. And as long as there is a right of reimbursement or right of subrogation, that is not an amount that the defendant can get back as a set-off. That's right. And the plaintiff gets that money. The statute anticipates that the subrogated party is going to appear or somebody is going to say that the subrogated party is going to be paid for its outlay. And that amount is not, the amount that the hospital would come after is not an amount that we're trying to reduce. I understand that the stipulation amount is different. I understand that. But let's stick with my hypothetical. I want to know what Florida law says if the subrogate doesn't appear. I don't have the exact answer to that, Your Honor. Is there because there isn't one? I don't. There's no case. I'm not aware of a specific case that deals with that question, Your Honor. No case that says, for example, the subrogated party has X amount of time to appear to collect part of the judgment. I'm not aware of a case. And if it doesn't appear, we'll reduce the total award by that amount. Right. I'm not aware of that being in the law. The only thing I was trying to point out is that the contractual discount we would be entitled to regardless of whether the hospital or anybody else came back under your hypothetical because that amount that they are allowed to come back and seek reimbursement for is already in the judgment. It's not something we're taking a set off for. It's the amount above that. But your request for a reduction assumes that the hospital is not seeking that money. No, it actually doesn't, Your Honor. That's what I was trying to clarify is there's an amount, there's a full amount of the bill that was $345,000. And I understand that. Your assumption is that the amount of money that the University of Wisconsin Hospital expended, the expenses, they're going to swallow them. They're not going to seek compensation. So, therefore, you reduce the judgment by that amount to keep the plaintiff from having double recovery. Well, because the hospital has a contract with the VA under which to... I know that, but the hospital spent some money that it didn't get back. And your argument is, seems to me, that you can... It assumes the hospital is not going to be paid out of the judgment. And, therefore, you should have yours reduced by the amount that the hospital forgives. Well, in this case, the hospital... Are you following me at all? I am, Your Honor. The point I'm trying to make is that the full amount of the hospital charges, it has been, it will be paid. It's not something we're trying to get back. How is the hospital going to be paid? Well, the hospital has a contract with the VA under which... I know that.  The hospital incurred some expenses that have not been compensated in the hypothetical. And it has a right to get them out of the judgment from plaintiffs. That's right. And you want to reduce the amount of the judgment. But it only has the right to $154,000, and we're not touching that. I understand that. You want to reduce it down to $154,000 under the assumption that that's all that they'll seek. Because there's no... The contractual discount is not an amount that they can seek. I mean, the assumption of your position is that the VA, the hospital, aren't going to come back and change their positions. They are bureaucracies, but that it's pretty much written in stone that they're not going to seek this amount that they're not talking about. Well, it's right there, and it's not just speculation. It's right there in the VA letter that was actually the plaintiff's counsel submitted with their briefing. It's got... The VA wants the amount that it paid to non-VA facility, and that's the $154,000 amount. It's not even trying to seek, nor could it seek, an amount that it never paid. So there's really, from the four corners of the documents here, we don't think there's any dispute as to what the hospital ultimately can recover. I think we have your case. You said some rebuttal time. Mr. Baker. Good morning. My name is Fred Baker. I'm the counsel for plaintiff Mr. Griffin. And we respectfully request that this court affirm the district court's order regarding the collateral source setoff. We think that Philip Morris waived the collateral source setoff for at least three different reasons. First of all, by virtue of entering into the stipulation wherein they did not reserve their collateral source setoff rights. Secondly, by requesting a generalized rather than itemized verdict. And third, by the comments that they made in closing, which they encouraged the jury to... They told the jury that it did not have to award the amount that was contained within the stipulation. So I'd like to go through each of these three waiver arguments. First of all, the waiver by stipulation. The stipulation is simply for a dollar amount of expenses. That's the entirety of the agreement between the two sides. The agreement does not say this is for these specified bills. It doesn't relate back to those specified bills in the substance of the stipulation. There's no reservations of rights made in connection with the agreement. The stipulation simply stands for the words in that stipulation and nothing more. Had Philip Morris wanted to preserve its right of collateral source setoff in that stipulation, there's a couple things it could have done. One, it could have said when it was entering the stipulation, they could have had a line subject to collateral source setoffs as set forth in the billing records. Or it could have, probably the best way to preserve its argument, whether or not we would have agreed to this, I don't know, but it could have stipulated to the admission of the Rule 1006 Exhibit. But I have a lot of trouble with this argument. You stipulated to a number. You had an answer that pleaded the collateral source setoff. The pretrial statement or pretrial order, whatever it's called, preserved the point as well. And presumably, as your second argument presupposes, that stipulation could have gone into evidence and Philip Morris could have asked the judge for a special verdict that would have made clear whether the jury had awarded that number or not, or what part of it they had awarded. And as your second argument presupposes, they would have been entirely within their rights to do so, right? They would have been within their rights to do so. I don't think, though, it would have solved the problem because that's a different question. They would have been within their rights. But if they had, by entering into the stipulation, or by itself, waived any collateral source setoff, then the logical answer to my question is no. They couldn't have asked for a special verdict because they already waived that. That ship had sailed. So I don't get your first argument at all. The second one's a lot better. Well, you've heard the sum and substance of my first argument, and I understand your position, Your Honor. But we believe that... I'm wrong about it. I'm here to be educated. The stipulation serves as only proof. And these are in the alternative. They don't have to stack upon each other. If you don't accept the first argument and the second argument persuades the court, then I'm perfectly happy with that result. But I think I do have three arrows in my quiver. And so, if you look at that, stipulation and a stipulation, the law holds, is simply what it reflects onto the case. Counsel, you and your colleague haven't touched on the point. The standard of review is abuse of discretion. How does a judge abuse his discretion? In this instance, I don't believe... There are two ways in which you can abuse discretion. Are you familiar with those? Yes. What are they? Well, the failure to follow the law. Yeah, you make a mistake of law. And the second one is you make fact findings that are clearly erroneous. Correct. If either of those happens, the judge abuses discretion. So the first question is, what did the law require the judge to do in deciding this motion? The law... With regard to the money. The law required... The law would require the court to honor a preserved collateral source set-off claim. And here, that didn't occur. And so when Judge Lisi looked at the motion and our response to that motion, she went for the lowest hanging fruit, which was Florida law requires that if you're going to a collateral source set-off, then you have to preserve that through an itemized verdict. And they did not do that. And so that's as far as she went. So the judge didn't misapply the law, as you argue. Correct. That's pretty simple, isn't it? It's one of my favorite arguments, Your Honor. Judges tend to like that argument, too. Especially the trial judges. And the fact of the matter is that rule creates clarity. I believe, Your Honor, Judge Choflat, you said in the earlier argument that uncertainty in the law is an undesirable thing. And what you want in these verdicts is certainty. And you can look at that verdict and say, this is lost wages, this is pain and suffering, and this is the medical expenses. And what is the reason for the rule? So that you don't have to speculate. That's right. So you don't have to speculate. Correct, Your Honor.  Your colleague has to convince us that that's not the rule. That's your position, and he has a different position. Right. And we think the Florida law supports our position. You don't know when to sit down. Excuse me. Go ahead. The third argument that we had, since we've more or less covered the stipulation and the failure to request an itemized verdict, our third argument is that in the closing, Philip Morris' counsel did indeed state that the jury did not have to award the stipulated sum. But to wrap up, during the course of any trial, attorneys make decisions. And those decisions have consequences. We think they made three decisions. And the consequences of those three decisions, entering a stipulation without a reservation of rights, requesting a generalized verdict as opposed to an itemized verdict, and then their statements in closing, all of those have consequences. And taken individually and collectively, they amount to a waiver of the collateral source set-off claim. And it's a situation of Philip Morris' own making. They invited the situation, and they should not now be heard to complain. Therefore, we'd ask that you affirm the district court's order. Thank you. Mr. Banchetti? What would the Supreme Court of Florida say with this general verdict? I think the fundamental difference between the cases that Plaintiff is relying on for Florida, what's saying that Florida law says you can't speculate, if you look at every single one of the cases that Plaintiff cites, they're all situations where you did not have a stipulated amount. And we think that that's the difference. We're not asking for speculation. It's dealing with a general verdict, so what would it say? There's an exception to the general verdict rule? It would say that the rule – The reason for the general verdict rule is obviously you don't want to speculate. Do you agree with that? Right, right. And that's in our position here. I understand that we have different positions. You agree with that? Our position is we're not speculating here. Florida law is that – We have to write an opinion if you prevail. So what do we say in discussing the general rule that we don't speculate? There's an exception for this kind of case. Why? There's an exception to that because it can be determined from the record exactly what the jury awarded for each category of medical expense or each category of damages. And so in a situation where it can be determined from the record – We make an assumption that the jury verdict includes the stipulated amount. Where in a case like this where we have a stipulation and the record supports it, yes. I understand. They stipulate it to the amount that we assume is in the verdict. Because the jury is presumed to follow its instructions. We're anticipating the Supreme Court of Florida. So writing the opinion as if we were the Supreme Court, we would say, in a general verdict setting, where there was a stipulation as to medical expenses, we will assume that the verdict, no matter what size, includes that amount. I think we would say where it can be clearly determined from the record what the jury awarded. I'm squeezing it down. We've got a stipulated amount of medical expenses. And so we're going to write an exception to the general rule that we don't reduce the general verdict. But we're making an exception. The exception is – is your argument the exception is where it's stipulated? The exception is where there's a stipulation and where speculation is not required. Because we don't believe speculation is required here, which is the point I'm trying to make. Well, then if that's the case, the general verdict doesn't make any difference. If that's the case, it doesn't matter that it's a general verdict. Your argument is. Yes. Okay. I understand you now. I know my time's almost up. We thank the court for its time. And we simply want to note that the reduction we're asking here would put the parties back into position where they should be, which is that each side is responsible for half, based on the jury's comparative fault determination, of the amount that was actually paid for this hospital bill. Thank you. Thank you. We're going to take about a 10-minute recess.